UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

        Plaintiff,

v.                                                           Case No. 13-C-927

ROBERT NARVETT and
SHIELD MANAGEMENT GROUP, INC.,

        Defendants.

## ORDER GRANTING MOTION TO COMPEL

The United States Securities and Exchange Commission (SEC) brought this action against Defendants Robert Narvett and Shield Management Group, Inc., for an order enjoining alleged violations of the Securities and Exchange Acts, requiring the defendants to disgorge any ill-gotten gains, and directing the defendants to pay appropriate civil penalties. The case is before the court on a motion to compel filed by the SEC. The SEC seeks production of a variety of documents in response to its first set of requests for production. Defendants Robert Narvett and Shield Management Group, Inc., objected to Plaintiff's requests, asserting that production would violate Narvett's Fifth Amendment privilege against self-incrimination. This was the sole objection to each of the SEC's requests. After an unsuccessful conference required under Civil L.R. 37, the SEC filed this motion.

This motion is about the intersection of two related, but distinct, doctrines controlling the application of the privilege against self-incrimination: the collective entity doctrine and the act-of-production doctrine. The collective entity doctrine flows from the fact that the Fifth Amendment

privilege against compulsory self-incrimination is personal in nature. *Bellis v. United States*, 417 U.S. 85, 90 (1974). Collective entities, like corporations, do not enjoy this privilege because they are legal entities distinct from their members. *Id.* at 90, 101; *see also United States v. White*, 322 U.S. 694, 698 (1944) ("The constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals."). Because collective entities do not enjoy the privilege, an individual who holds records in a representative capacity cannot rely upon the privilege to avoid producing the records of the collective entity. *Braswell v. United States*, 487 U.S. 99, 108–09 (1988).

The act-of-production doctrine, as the name implies, focuses not on the content of the documents to be disclosed, but on the "communicative aspects" of the acts performed by the person who provides the documents. *Fisher v. United States*, 425 U.S. 391, 410 (1976). For example, the act of providing the documents "tacitly concedes the existence of the papers demanded and their possession or control" by the individual, as well as the individual's "belief that the papers are those described." *Id.* Depending on the facts and circumstance of the case, these "tacit averments" could be "both 'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment." *Id.*; *see also United States v. Hubbell*, 530 U.S. 27, 36 (2000) ("[W]e have also made it clear that the act of producing documents in response to a subpoena may have a compelled testimonial aspect. We have held that 'the act of production' itself may implicitly communicate 'statements of fact.'"); *United States v. Doe*, 465 U.S. 605, 612 (1984) ("Although the contents of a document may not be privileged, the act of producing the document may be.").

The Supreme Court directly addressed the intersection of the collective entity and act-of-production doctrines in *Braswell*. The *Braswell* Court concluded that the petitioner—who was also

the corporate custodian, sole shareholder, and one of three directors of two corporations in that case—could not "resist a subpoena for corporate records on Fifth Amendment grounds" because the "agency rationale undergirding the collective entity decisions" remains good law despite the rise of the act-of-production doctrine in *Fisher* and *Doe*. 487 U.S. at 108–09. In fact, *Fisher* "reaffirmed the obligation of a corporate custodian to comply with a subpoena addressed to him." *Id.* at 112. The rejection of the extension of the act-of-production doctrine was not complete, however. The Supreme Court expressly left open the question of whether the Fifth Amendment protection applies to the production of business records when a corporation has only a single employee who also serves as the sole officer. *Id.* at 118 n.11 ("We leave open the question whether the agency rationale supports compelling a custodian to produce corporate records when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records.").

Narvett seizes upon this footnote to assert that his act of production on behalf of Shield would implicate him. (Def. Resp. in Opp'n 1, ECF No. 19.) He argues that he falls within the possible exception that the Supreme Court left open in *Braswell* because he is the corporate defendant's "bookkeeper; its record-keeper; its only employee; and its only shareholder." (*Id.*) According to Narvett, if he produces the information and documents requested by the SEC, "Narvett will implicitly concede that he personally created the documents, that they were in his personal possession or control, and that the documents are authentic." (*Id.* at 3.) Because these concession have "testimonial aspects," his Fifth Amendment privilege should extend to protect him from producing the information. (*Id.*) Narvett does not, however, cite to any court that has extended the act-of-production doctrine as he suggests in the more than 25 years since Braswell was decided.

3

Indeed, the argument has been rejected by every court that has addressed it. In *United States v. Insurance Consultants of Knox, Inc.*, the Seventh Circuit rejected a claim of privilege under the Fifth Amendment to avoid compliance with an IRS summons requiring production by a taxpayer in both his individual capacity and as secretary of a corporation of records of his financial transactions:

> If Miller could refuse to comply with the summons issued to him as custodian of documents because he has a personal interest in not incriminating himself, *Braswell* and the entire line of cases that establish the collective entity doctrine, going back 93 years to *Hale*, would be overruled. Needless to say, that is not feasible. Even if Miller could assert a personal interest, the Fifth Amendment privilege against self-incrimination which exists for private papers would not protect individuals against being forced to produce records required by law, *see Shapiro v. United States*, 335 U.S. 1, 17 (1948), like most of those demanded in the summonses here.

187 F.3d 755, 760 (7th Cir. 1999).

It is not clear from the decision in *Insurance Consultants* whether the company was a "one-man" operation as is alleged here. The First, Second, and Fourth Circuits, however, have all rejected his argument in cases that are factually indistinguishable from this case. *See, e.g.*, *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 158 (2d Cir. 2010); *Amato v. United States*, 450 F.3d 46, 52 (1st Cir. 2006); *United States v. Stone*, 976 F.2d 909, 912 (4th Cir. 1992). The Ninth Circuit rejected the extension in a case where the defendant was the sole owner, operator, and member of several limited liability companies. *United States v. Feng Juan Lu*, 248 F. App'x 806, 807–08 (9th Cir. 2007). District courts in the Seventh Circuit have also uniformly rejected the extension. *See, e.g.*, *U.S. S.E.C. v. A Chicago Convention Ctr., LLC*, 13 C 982, 2013 WL 4010585, at *6–7 (N.D. Ill. Aug. 5, 2013); *United States v. Maxey & Co., P.C.*, 956 F. Supp. 823, 829 (N.D. Ind. 1997); *Hewitt Associates, LLC v. Zerba*, 96 C 2428, 1996 WL 734716, at *2 (N.D. Ill. Dec. 19, 1996).

Narvett has not made any effort to distinguish any of these cases; in fact, he does not even cite to them. He also does not make any argument based on law or policy that supports the extension of the act-of-production doctrine, other than noting that he is the sole bookkeeper, record-keeper, employee, and shareholder. This was equally true in the above cases where the record custodian's assertion of his Fifth Amendment privilege was uniformly rejected.

In *Grand Jury Subpoena Issued June 18, 2009*, the Second Circuit offered several reasons for this rejection. "First, it prevents the erosion of the 'unchallenged rule that the corporation itself is not entitled to claim any Fifth Amendment privilege.'" 593 F.3d at 158-59 (quoting *Bellis v. United States*, 417 U.S. 85, 90 (1974)). "Second, it recognizes that the decision to incorporate is freely made and generates benefits, such as limited liability, and burdens, such as the need to respond to subpoenas for corporate records." *Id.* at 159. "Third, it avoids creating a category of organizations effectively immune from regulation by virtue of being beyond the reach of the Government's subpoena power." *Id.* The Court also questioned the basic premise of the argument that compliance with the subpoena was testimonial, suggesting that a jury need not be told how the records were obtained by the government: "For example, the jury might believe the Government obtained the documents entirely on its own, such as by conducting a search. Even if the jurors learned that the Government obtained the documents via a subpoena, they might infer that the corporation engaged a third party to search its records and make the production on its behalf." *Id.*

The fact that the government could obtain the same documents through the execution of a search warrant on the custodian's home or business would seem reason enough to reject the argument that the custodian has a Fifth Amendment right to withhold them. The records themselves are clearly not protected. *See Fisher*, 425 U.S. at 410 ("The taxpayer cannot avoid compliance with

5

the subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else."). Requiring the custodian to produce the records in response to a subpoena is far less intrusive than executing a search warrant for them at his home or business and no more incriminating. For this reason, it is difficult to see how requiring the custodian to produce the records could ever be deemed a violation of the custodian's Fifth Amendment rights.

In any event, the law provides no support for Narvett's refusal to comply. Accordingly, Plaintiff's Motion to Compel is **GRANTED**.

**IT IS THEREFORE ORDERED** that Defendants must produce all responsive documents to Plaintiff within twenty (20) days.

Dated this   14th   day of April, 2014.

                                              s/ William C. Griesbach
                                              William C. Griesbach, Chief Judge
                                              United States District Court